**Opinion filed May 29, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00264-CR

_____

## RICHARD LEE DAVIS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-21-1967-CR**

## M E M O R A N D U M   O P I N I O N

Appellant, Richard Lee Davis, was convicted by a jury of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2025). Appellant pled "not true" to an enhancement allegation (a 2009 conviction for aggravated sexual assault of a child), which the jury found to be "true," and the jury assessed his punishment at life

imprisonment in the Correctional Institutions Division of the Texas Department of Criminal Justice. *Id.* § 12.42(c)(2). The trial court sentenced Appellant accordingly.

On appeal, Appellant contends that the trial court erred when it: (1) failed to limit in its guilt/innocence charge the correct definitions of the culpable mental states—"intentionally" and "knowingly"—that apply to the offense of aggravated sexual assault of a child; and (2) submitted an Article 38.37 instruction in the same charge that was inconsistent with the extraneous offense limiting instruction it orally gave the jury during trial.[1] *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(E), (b) (West Supp. 2025). We affirm.

## I. *Factual Background*

Because Appellant does not challenge the sufficiency of the evidence to support his conviction, we only recite the facts that are necessary to address the issues that he has raised on appeal.

The child victim, J.H.D., was eleven when Appellant began touching her inappropriately in the fall of 2019.[2] At the time, Appellant lived in a vehicle on the property where J.H.D. and her mother resided, but J.H.D.'s mother allowed Appellant to have access to the common areas of her home. J.H.D. testified that she and her mother were in their home watching a movie with Appellant when at some point Appellant reached under a blanket that was covering J.H.D. and began rubbing

---

[1]Appellant's first court-appointed appellate counsel submitted an *Anders* brief and filed a motion to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Following the procedures set forth in *Anders*, *Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014), and *In re Schulman*, 252 S.W.3d 403 (Tex. Crim. App. 2008), we independently reviewed the record and concluded that this appeal was not particularly amenable to disposition under *Anders*.

Appellant filed responses to counsel's *Anders* brief and requested the appointment of new appellate counsel. Accordingly, we granted counsel's motion to withdraw, abated this appeal, and remanded this cause to the trial court with instructions to appoint other appellate counsel. New appellate counsel was directed to file a brief on the merits and address any substantive issues that appellate counsel deemed to be arguable. This appeal was reinstated after the trial court appointed new appellate counsel.

[2]To protect the identities of the child victim and her family, we refer to them by pseudonyms or initials. *See* TEX. CONST. art. I, § 30(a)(1); TEX. R. APP. P. 9.10(a)(3), 9.8 cmt.

her upper thigh and pubic area over her pants. In the days that followed, Appellant showed J.H.D. pornography. One evening, Appellant entered a bedroom where J.H.D. was sleeping, crouched next to the bed, slid his hand under her clothing, and penetrated her vagina with one of his fingers. After J.H.D.'s mother saw her watching pornography approximately two years later, J.H.D. told her mother that Appellant had shown her pornography and sexually abused her in the past.

At trial, J.H.D.'s older sister testified that Appellant had made inappropriate and sexually suggestive comments to her and entered her bedroom on one occasion wearing only a towel. Evidence was also presented that on August 10, 2007, Appellant pled guilty to the same offense—aggravated sexual assault of a child (the child victim of this offense was thirteen)—and was placed on deferred adjudication community supervision; he was subsequently adjudicated and convicted of this offense on September 11, 2009.

Appellant's primary defenses at trial were that (1) the charged offense was based on fabricated testimony, and (2), alternatively, J.H.D. was mistaken as to the identity of the person who had allegedly sexually assaulted her—he denied that he ever touched J.H.D. In its guilt/innocence charge, the trial court submitted the "intentionally" and "knowingly" definitions that Appellant challenges on appeal and an extraneous-offense instruction that is consistent with the language in Article 38.37, Sections 1(b) and 2(b), and Rules 404(b) and 405(b) of the Texas Rules of Evidence. *See* CRIM. PROC. art. 38.37 §§ 1(b), 2(b); TEX. R. EVID. 404(b), 405(b).

## II. *The Culpable Mental State Definitions*

In his first issue, Appellant contends that the trial court erred when it did not provide the correct definitions of "intentionally" and "knowingly" in the charge because it failed to restrict the culpable mental states that apply to the offense of aggravated sexual assault of a child.

3

The Penal Code prescribes four culpable mental states—intentionally, knowingly, recklessly, and criminally negligent. *See* PENAL § 6.03 (West 2021). "'[T]he scope of those culpable mental states is limited by the type of offense [that is charged],' which depends on the 'conduct element.'" *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (quoting *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994)). "There are three 'conduct elements': (1) nature of [the] conduct; (2) result of [the] conduct; and (3) the circumstances surrounding the conduct." *Id.* (quoting *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989)); *see also Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). An offense may contain any one or more conduct elements that alone or in combination form the overall behavior that the legislature intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen*, 781 S.W.2d at 603. A trial court errs when it fails to limit in its charge the language of the applicable culpable mental state(s) to the appropriate conduct element or elements of the specific offense to which they apply. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Cook*, 884 S.W.2d at 491.

As charged in this case, a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means, here, by Appellant penetrating J.H.D.'s vagina with one of his fingers. *See* PENAL § 22.021(a)(1)(B)(i). There is a distinction between a "result of conduct" offense and a "nature of conduct" offense. Aggravated sexual assault of a child is a "nature of conduct" or "conduct-oriented" offense. *See Young*, 341 S.W.3d at 423 (citing *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999)).

Appellant contends that the culpable mental states that apply—"intentionally" and "knowingly"—were incorrectly defined in the charge. We agree, as does the State. Here, the charge defined "intentionally" and "knowingly" as follows:

4

A person acts intentionally, or with intent, with respect to a *result* of his conduct when it is his conscious desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a *result* of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*See generally* PENAL § 6.03(a)–(b) (emphasis added). As can be seen, the charge's definitions of "intentionally" and "knowingly" refer to the incorrect conduct element—"*result* of his conduct"—rather than to the proper conduct element for this offense—"*nature* of his conduct." Therefore, because the mental states defined in the charge were not properly limited to the applicable "nature-of-conduct" element, the trial court erred.

### III. *Charge Error*

#### A. *Standard of Review*

Our review of charge error complaints is a two-step process. *Campbell*, 664 S.W.3d at 245 (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). First, we must determine whether error exists. *Id.* If there is no error, our analysis ends. *Id.*; *Loza v. State*, 659 S.W.3d 491, 497 (Tex. App.—Eastland 2023, no pet.). However, if error does exist, we must decide whether the appellant was harmed and if the harm is sufficient to require reversal. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd). The applicable standard of review to be utilized for charge error depends on whether the claimed error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have

the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting CRIM. PROC. art. 36.14 (West 2007)). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

B. *Harm Analysis*

Because we have determined, and the State concedes, that charge error exists regarding the culpable mental state definitions that the trial court submitted in its charge, we must now conduct the necessary harm analysis. *See Ngo*, 175 S.W.3d at 743. There is no dispute that Appellant's trial counsel did not object to the above definitions of "intentionally" and "knowingly" as they were submitted in the charge. Therefore, we review the complained-of charge error under the *Almanza* "egregious harm" standard. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Under this standard, when, as in this case, the defendant or his trial counsel failed to assert proper objections to the charge or failed to request and present proper jury instructions for inclusion in the charge, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171.

"Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villarreal*, 453 S.W.3d at 433; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). "Egregious harm is a 'high and difficult standard' to meet, and such a

determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Further, "[a]n egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

C. *The Almanza Factors*

The court in *Almanza* identified the factors that a reviewing court should consider in determining whether complained-of charge error resulted in egregious harm. 686 S.W.2d at 171. They are: (1) the charge itself; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information that is shown by the trial record. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171); *Cosio*, 353 S.W.3d at 777 (citing *Hutch*, 922 S.W.2d at 171). These factors guide our analysis. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).

1. *The Charge as a Whole*

The first *Almanza* factor requires that we review the charge in its entirety. *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has held, and we agree, that "[w]here the [charge's] application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Arevalo v. State*, 675 S.W.3d 833, 854 (Tex. App.—Eastland 2023, no pet.); *see also Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd) ("Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious.").

The definitions of which Appellant now complains are contained in the abstract section of the charge. Abstract paragraphs "serve as a glossary to help the

jury understand the meaning of concepts and terms [that are] used in the application paragraphs of the charge." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Application paragraphs apply "the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012).

Despite the trial court's failure to properly define the applicable culpable mental states, the charge and its application paragraph properly tracked the language of the indictment, the necessary statutory language, and the elements of aggravated sexual assault of a child. No harm results from the trial court's failure to limit the definitions of the culpable mental states in the abstract portion of the charge if the charge and the application paragraph correctly instruct the jury, as it did here, about the elements of the charged offense. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995); *Hughes v. State*, 897 S.W.2d 285, 296–97 (Tex. Crim. App. 1994) ("[W]hen [the terms "intentionally" and "knowingly"] are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense."); *Arevalo*, 675 S.W.3d at 854–55; *see also Rodriguez v. State*, No. 11-24-00252-CR, 2026 WL 770624, at *5 (Tex. App.—Eastland Mar. 19, 2026, no pet.) (mem. op., not designated for publication); *Elliston v. State*, No. 11-23-00270-CR, 2025 WL 477656, at *8 (Tex. App.—Eastland Feb. 13, 2025, no pet.) (mem. op., not designated for publication); *Price v. State*, No. 10-22-00047-CR, 2023 WL 4363066, at *3 (Tex. App.—Waco 2023, no pet.) (mem. op., not designated for publication) ("The extra result-of-conduct language in the abstract definitions was merely superfluous as it had no effect on the jury's ability to implement the application paragraph.").

Here, although the charge incorrectly omitted the required "nature of conduct" conduct element in the "intentionally" and "knowingly" definitions, the charge and the application paragraph sufficiently tracked the language of the indictment and the

statutory elements of the indicted offense. Contrary to Appellant's suggestion, the trial court's failure to limit the definitions of the culpable mental states in this instance does not result in egregious harm. As such, we conclude that the charge when read in its entirety and in proper context does not weigh in favor of finding actual, egregious harm. *See Medina*, 7 S.W.3d at 640; *Rodriguez*, 2026 WL 770624, at *5; *Elliston*, 2025 WL 477656, at *8.

### 2. *The State of the Evidence Presented at Trial*

The second *Almanza* factor focuses on the entirety of the evidence presented at trial. *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. On appeal, Appellant does not contend that his conviction is supported by insufficient evidence. Instead, Appellant focuses on whether the charge error of which he now complains improperly affected or influenced the jury's decision to find him guilty.

Appellant advanced two defensive theories at trial—fabrication and misidentification. Where no defense is presented that would directly affect the determination of a defendant's mental state, no harm results if the trial court submits erroneous definitions of "intentionally" and "knowingly," as it did here. *See Love v. State*, 706 S.W.3d 584, 606 (Tex. App.—Austin 2024, pet. ref'd); *Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd); *Martinez v. State*, No. 11-13-00080-CR, 2015 WL 1322315, at *6 (Tex. App.—Eastland Mar. 20, 2015, pet. ref'd) (mem. op., not designated for publication).

In this case, Appellant's primary theories and defenses were that he did not sexually abuse, or even touch, J.H.D. As such, Appellant's mental state was not an issue at trial. Thus, the state of the evidence weighs against finding actual, egregious harm with respect to how the terms "intentionally" and "knowingly" were defined in the charge.

### 3. *The Arguments of Counsel*

The third *Almanza* factor pertains to the arguments of trial counsel. In weighing this factor, we must determine whether any statements made by the State, Appellant's trial counsel, or the trial court exacerbated or ameliorated the charge error. *Arrington*, 451 S.W.3d at 844; *see also Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

During closing arguments, neither party argued, alluded to, or even mentioned the defined mental states or their application. Instead, in his closing argument, Appellant's trial counsel focused on Appellant's denial of committing the charged offense and argued that he never touched J.H.D. In its closing argument, the State did not discuss or allude to Appellant's intent or knowledge. Rather, the State's argument focused primarily on J.H.D.'s credibility. Therefore, because the matter of Appellant's intent or knowledge was not a focus of counsels' arguments, the third *Almanza* factor does not weigh in favor of finding actual, egregious harm.

### 4. *Other Relevant Information*

Finally, the fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered actual, egregious harm because of the charge error. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *see also Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

We have outlined the evidence above that is pertinent to our harm analysis. Further, nothing in the record indicates that the jury was misled, confused, or concerned about any aspect of or deficiencies in the charge to which Appellant now complains or that they were unable to render a correct verdict, consistent with the evidence presented, based on the trial court's erroneous definitions of "intentionally" and "knowingly." Moreover, the jury returned its verdict of guilt after only

deliberating for approximately one hour, which suggests that they found the State's evidence to be compelling and Appellant's defenses unpersuasive.

Because the record does not demonstrate that the erroneous definitions affected or influenced the jury's ability to determine whether Appellant had the requisite intent or knowledge to sexually abuse J.H.D., this factor weighs against finding actual, egregious harm.

### 5. *The Almanza Factors Considered Together*

As we have said, the trial court erred when it submitted incorrect mental state and conduct element definitions in the charge. However, we conclude that this error did not result in a level of actual, egregious harm such that Appellant was deprived of a fair and impartial trial. *See, e.g.*, *Arevalo*, 675 S.W.3d at 853–56; *Rodriguez*, 2026 WL 770624, at *4–6; *Elliston*, 2025 WL 477656, at *9–10; *Gonzalez v. State*, No. 11-22-00117-CR, 2024 WL 2965154, at *4–6 (Tex. App.—Eastland June 13, 2024, no pet.) (mem. op., not designated for publication); *Espinosa v. State*, No. 11-22-00100-CR, 2024 WL 1862786, at *8–11 (Tex. App.—Eastland Apr. 30, 2024, no pet.) (mem. op., not designated for publication); *Rice v. State*, No. 11-22-00032-CR, 2023 WL 5109158, at *4–6 (Tex. App.—Eastland Aug. 10, 2023, no pet.) (mem. op., not designated for publication); *Elizondo v. State*, No. 11-21-00173-CR, 2023 WL 2169968, at *2–4 (Tex. App.—Eastland Feb. 23, 2023, no pet.) (mem. op., not designated for publication); *Green v. State*, No. 11-21-00097-CR, 2023 WL 1825168, at *6–8 (Tex. App.—Eastland Feb. 9, 2023, no pet.) (mem. op., not designated for publication).

Accordingly, we overrule Appellant's first issue.

### IV. *Article 38.37 Instruction*

In his second issue, Appellant asserts that the trial court erred by submitting an Article 38.37 instruction in the charge that was inconsistent with the extraneous-offense limiting instruction it orally gave the jury during trial when it admitted the

judgments that relate to Appellant's 2009 felony conviction. *See* CRIM. PROC. art. 38.37 § 2(a)(1)(E), 2(b).

At the outset, the State contends that Appellant did not adequately brief this issue, therefore, it has been waived. To assert an issue on appeal, an appellant's brief must include "a clear and concise argument for the contentions made, *with appropriate citations to authorities and to the record.*" TEX. R. APP. P. 38.1(i) (emphasis added); *Arevalo*, 675 S.W.3d at 845; *Ybarra*, 621 S.W.3d at 379 n.3. Therefore, an appellant waives an issue on appeal if he fails to present supporting arguments, substantive analysis, and citations to authorities in his brief. *See* TEX. R. APP. P. 38.1(i); *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000).

We agree with the State that Appellant failed to adequately brief this issue. Appellant offers no substantive argument, discussion, or analysis, or any record or authoritative citations to support his contention that the trial court erred when it instructed the jury about the relevant provisions of Article 38.37. The extent of Appellant's complaint, which consists of approximately two pages of his brief, is essentially a restatement of his second issue, a recitation of the complete text of Rule 404, and a handful of generalized comments. Nevertheless, we will explain why the trial court did not err as Appellant suggests.

A. *Article 38.37 and Rule 404(b) Evidence*

Although evidence of a person's character or character trait and crimes, wrongs, and other bad acts committed by that person is generally not admissible to prove character conformity, such evidence is admissible for several other reasons, such as to show a defendant's culpable mental state, motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. TEX. R. EVID. 404. Further, when prosecuting certain sexual offenses that involve a child victim, the State is permitted to present evidence, notwithstanding the

limitations of Rules 404 and 405 of the Texas Rules of Evidence, of other acts of sexual misconduct that the defendant committed against children; such evidence may be offered for any bearing the evidence has on relevant matters, including to prove character conformity. *See* CRIM. PROC. art. 38.37 § 2(a)(1)(E), 2(b); TEX. R. EVID. 404(b), 405(b); *see also Lozano v. State*, 706 S.W.3d 429, 441 (Tex. App.—Austin 2024, no pet.); *Romano v. State*, 612 S.W.3d 151, 158–59 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd); *Carmichael v. State*, 505 S.W.3d 95, 102 (Tex. App.—San Antonio 2016, pet. ref'd). As we have said, "[W]hen an indicted offense is one that is enumerated in Article 38.37, Section 2(a) . . . , as it is here, Section 2(b) permits the admission of extraneous evidence that shows the defendant has committed a separate offense of a sexual nature against a child." *Rodriguez v. State*, No. 11-24-00297-CR, 2026 WL 1423503, at *1 (Tex. App.—Eastland May 21, 2026, no pet. h.); *see Wishert v. State*, 654 S.W.3d 317, 330–33 (Tex. App.—Eastland 2022, pet. ref'd) (collecting cases); *see also Deggs v. State*, 646 S.W.3d 916, 922 (Tex. App.—Waco 2022, pet. ref'd).

Here, the evidence of Appellant's deferred adjudication and subsequent conviction for the same offense—aggravated sexual assault of a child—was admissible to show Appellant's propensity to commit acts of sexual misconduct against children and others. *See Rodriguez*, 2026 WL 1423503, at *1; *Lozano*, 706 S.W.3d at 441; *Wishert*, 654 S.W.3d at 330–33; *Deggs*, 646 S.W.3d at 922; *Singleton v. State*, 631 S.W.3d 213, 220 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd). Because the trial court admitted this evidence, Article 38.37 became the law applicable to the case and the trial court was then required to submit a charge to the jury that accurately set forth the law, which it did. CRIM. PROC. art. 36.14; *Vega v. State*, 394 S.W.3d 514, 518–19 (Tex. Crim. App. 2013) (citing *Delgado*, 235 S.W.3d at 249). Pursuant to its statutory duty, the trial court in its instructions accurately tracked the language of Article 38.37, Section 2, which permits the

admission of such evidence for all relevant purposes. *See* CRIM. PROC. art. 38.37 § 2(b).

Because the trial court did not err in its instructions to the jury, we need not engage in a harm analysis on Appellant's second issue. *See Campbell*, 664 S.W.3d at 245 (citing *Ngo*, 175 S.W.3d at 743); *Loza*, 659 S.W.3d at 497 (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)).

Accordingly, we overrule Appellant's second issue.

V.  *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


May 29, 2026

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.